Case for argument is Williams v. Brandon Brooks. Mr. Barnhart. Good afternoon, Judge. Counsel, may it please the court, I would like to address and focus on the excessive forces against Officer Brandon Brooks and stand by and rely on the briefing for the remaining issues. Mr. Williams deserves his day in court because the record establishes that a reasonable fact finder could find in favor of Mr. Williams. Separate and apart from the video in this case, which was the District Court's decision, an eyewitness in this case at the scene saw what Officer Brooks did to Mr. Williams and candidly testified that he wouldn't want that done on him, or worse to that effect. Similarly, looking at Williams behavior is incomprehensible. Judge, a police officer tells you you stay in the car and you walk away. Big guy, also, much taller than the police officer. Judge Posner, his statements were vague in terms of to Mr. Williams in the sense of he said sit tight. In terms of kind of what's going on in that context, he saw some some dirt on his mirror. I don't understand that, getting up and leaving the car, when you're told by a police officer stay in the car. Well, I think you have to this individual, this is a successful businessman that hasn't had... Yeah, well that's worse, right? He should know better if he's a successful businessman, rather than think that because he's a successful businessman, he's above the law and ignore the police. And certainly, and I think... Which is what he did. Respectfully, Judge. He ignored the police. He, in the context of what was going on... And all the cop wanted to do was give him a warning. Make a fuss about a warning? I think it's important... What kind of person does that? I think it's important to look in the context of the actions of the officer to Mr. Williams. And I think it's important, as the state criminal court found in his colloquy, in the acquittal of Mr. Williams of resisting law enforcement, that the battery that was committed in this case was committed by Officer Brooks on Mr. Williams, not by Mr. Williams on Officer Brooks. Police officers are permitted to seize people. When he marched off from his car, what was the police officer supposed to do? Wave goodbye to him? Well, in this case... Will you tell me what the police officer should have done? Should have directed him to get back in the car. Well, he did. And Williams didn't pay any attention to that. He eventually did get back in the car. Eventually. Yes. When he was shot, yeah, by the police. No, I think in terms of... He got back in the car, he pulled a... Officer Brooks pulled a weapon on Mr. Williams and then directed him back in the car. And then put him back in the car, and then once he was in the car, he approached him and had a colloquy with him. And then he said, I want to pull you out because you're not getting what's going on here or where it's at that effect. And at that point, Mr. Williams, who had nothing to drink, he had... And I think it's important in the context of the situation of Mr. Williams, coming home late at night and working late on a project. He was tired and hungry. And in that context, he pulled him out and said... And the officer said, I'm going to run you through field sobriety tests. And at that point... I'm not talking about that. I'm talking about when he got up and walked away from the car. Yes. From his car. I don't understand that behavior. Well, perhaps a better practice should have been for him to stay in the vehicle. Better practice? And I think the state... I don't think better practice is the correct word. You're stopped by the police. You don't start walking away. Who ever heard of that? In judge, I think in terms of this... What do you say? Well, you can have my car, but I'm leaving. I think in terms of this case, I think you have to look at it in two separate segments. And so perhaps he should have returned the vehicle more quickly than he did. However, Officer Brooks testified in this... I'm not talking about that. Officer Brooks testified... I'm talking about a situation in which a driver is stopped by the police. It's happened to everybody. And the notion that you walk away from the car when the police officer is trying to write a ticket or write a warning or something like that. I don't get it. Especially for, as you say, he's a businessman. He's educated. What's he thinking? Well, Judge, I think... Where was he going? Was he going to abandon his car or what? No, he was going to get a paper towel to wipe off some dirt that was on the mirror. And you understand that's why Williams was concerned. Like you said, your guy was tired. He had a really long day. I mean, to get out, that is very odd when the police stop you to get out and leave the car. You agree that's odd. Odd, but not unlawful. Yeah, but then he has to tell them seven times to get back. So he's thinking he's not tracking very well. You attribute it to being tired. But you understand why the officer could attribute it to someone who maybe is inebriated or who's had a few too many. Perhaps. Yeah. I mean, because it's just not common behavior. So that's why Williams is suspicious about how he's behaved. But it's the officer being abusive after that. That's the concern. We're agreeing, though, that the officer could have... I mean, you understand why the officer wanted a field sobriety test. So that gets us back to that part, right? I'm not necessarily conceding that, Judge. Well, but you certainly understand where that could be the basis for probable cause. Perhaps, yes. So if that's the basis for probable cause, then we move to was there any kind of abuse once the guy got back, when he asked him to get back out. But, of course, he asked him to get back out because he wants to give him the field sobriety test. And when he gets back out, Mr. Williams says, hey, I will take a PBT. I will take a portable breath test. And I will, because I know that I haven't had anything to drink. And at that point, that's when the officer lays hands on him and escalates it. I understand that police officers can do more than do the portable breath test. Certainly. They can ask somebody to walk or put their finger to their nose, all of that stuff. That's all reasonable. Yes. And I think that that's part of the confusion here. Perhaps, and officers are sometimes reticent to give PBTs in the beginning because the lawyers can sometimes use that against them. Exactly. To say you go right to that rather than asking all those other field sobriety test methods. Perhaps. But the issue here is there was no explanation by the officer to Mr. Williams saying, well, I can't do that, or in terms of that's not the better practice. He just immediately lays hands on Mr. Williams and pushes him repeatedly against the vehicle. And at the last sign, he lines him up with the mirrors. One of the problems is that the police officer is much shorter than Williams. Yes. I believe the police officer is approximately five feet, ten inches tall, and Mr. Williams is above six foot. Right. But the focus in the district court's decision in this case was on the video. And I think that you have an eyewitness that says, hey, I wouldn't want that done on me. I thought that it was excessive. And you also have a state criminal court judge that looks at it as well and comes to the same conclusion. Well, if the police order you back into the car and you refuse, what are they supposed to do? Well, they're certainly not supposed to apply excessive force in terms of physical force to repeatedly push him against the vehicle. And Judge Posner, I think that... Wouldn't he be better off if they just handcuffed him and put him in the police car and carry him off to the police station? To that point, I think he would have been... The more, let's see, the better practice would have been to hold him at a taser point until Officer Keel arrives. Hold him at what point? With his taser. So the taser was pulled twice the second time. Stand there? Yes. So there wouldn't have been a complaint if he had held the taser up? It's the physical abuse. And then what if he still didn't comply? Would there be a problem with him tasering him? And his hands, I think it's important, Judge, in terms of his hands were up in the taser when he was at taser point initially. And he was, in terms of his demeanor, he was calm. And it's the officer's repeated force against the vehicle. And again, I think in terms of lining him up, I think the district court overlooked the fact that there was a guttural groan of pain at the time that he, for the last instance where he propelled him against the mirror. And that is, you know, that's the issue here in terms of the force that was applied. And that's why it was excessive. I see that my time is up. Okay, thank you, Mr. Barnard. Mr. Horn, I'm sorry. Thank you. This was going to be an ordinary traffic stop. I don't think there was any dispute that there was a lane violation and also a failure to signal before turning onto Greenfield Avenue. The officer pulled him over. They were in a gas station parking lot. The officer checked his criminal history. Everything checked out. He's going to give him a warning. So he gets outside of his car, has the warning in hand. It could have all been over by then. But that's when things change, which is when Mr. Williams got out of the car inexplicably and walked somewhere. I think he presumed that Mr. Brooks would know he was a good citizen. But Mr. Brooks has had plenty of training and knows that you can't judge a book by its cover. So when someone gets out of their car during a traffic stop, you have to protect yourself and you have to fear for your safety and the safety of others. That's why after the seventh command to get back in the car, he drew his taser and says, get back in the car or I will tase you. Finally, he gets back in the car. After that, all bets are off. It's legitimate concern on Brooks' part that this guy may not necessarily be intoxicated, but he may be insane. He may be on drugs or something like that. He's only cracked his window maybe two or three inches. He's got something to hide. And the attitude is apparent throughout the video. He orders him out of the car, does a pat down, as he's entitled to do. And when he attempts to pat, when he orders him to turn around, he doesn't turn around. So Mr. Brooks gently helps him turn around by grabbing his right wrist and facing him toward the car. It would have been nice if Mr. Williams had conceded that and then Mr. Brooks could have searched his pockets and checked things out and done a field sobriety, but it never got to that point. So if somebody refuses a pat down or refuses an officer's search, then maybe they do have a gun. Mr. Williams didn't look like the kind who carried a handgun, particularly a legal handgun, or that he was a criminal, but Mr. Brooks has every reason to be concerned for his own safety. The reason there are these laws, and the district court cited a great case, Brindlin v. California, the officer has to have complete command of this situation in a typical traffic stop. That's why you're not allowed to get out of your car. There's a statute in the traffic code in the state of Indiana, 9-21, covers all the moving violations, every violation you can imagine, but there's an extra thing they add in there. It says, it is unlawful for a person to knowingly fail to comply with a lawful order or direction of a law enforcement officer invested by law with authority to direct, control, or regulate traffic. There's a specific statute on that subject, and it ties in with this Brindlin case and the idea that the officer has to have complete control of the situation. In terms of the excessive force, I saw very little. The most important thing in the briefing, and in this case, is that I suppose from a defense standpoint, our Alamo is the qualified immunity argument. The district court didn't reach that point, and we don't feel it's necessary either, but let's start there. The plaintiff, Mr. Williams, has to come forward with some law that it's clearly established that a couple pushes of a guy's abdomen against a car when he's refusing to submit to a pat-down or otherwise refusing any of the officer's instructions, that that's enough. Let me ask you this. Now, when you look at the video, when I looked at the video, the turn signal is on when the video begins from the dash cam, and are the turns where Officer Brooks says the signal wasn't made, that was done before the video begins? That's correct. When the officer turns the lights on to pull them over, it only goes 10 seconds back, so by the time that camera comes on, he's already stopped. They're already at Greenfield Avenue. I just wanted to clarify. The actual moving violation is not on camera. But anyway, if you look at the case log and if you look at the video, there are no cases that exist that match this case specifically. There's no case that shows that it is clearly established that shoving a guy a couple times against the car is a constitutional violation. This guy had no injuries. He complained of back pain. He had no treatment. He complained a little bit about the handcuffs, but that claim has been waived because it was Officer Kell who handcuffed him, and there was no excessive force made against Officer Kell, so that's out the window. Unless there are any other questions, I will conclude. I respectfully request that this court affirm the findings of the district court on summary judgment. Thank you. Okay. Thank you, Mr. Horn. So, Mr. Barnhart, do you have anything further? I think it's first important to point out the fact that Officer Brooks testified in his deposition. I think it's consistent also with his trial testimony that he didn't have concerns for his safety after he ordered him out of the car a second time and that he was running him through the tests. And this court has, with respect to the force issue, this court has said repeatedly in terms of excessive force can apply in the context, officers know that they're not applying more force than necessary. In this context, you have an officer that right from the beginning of the inception of the traffic stop says, are you copping an attitude with me, or words to that effect? Are you having an attitude with me? And Ms. Williams explains, no, I'm not. I'm trying to get home. And so from that standpoint, that colors and gives context to the stop. And I think that should not be removed from the situation in terms of pushing Mr. Williams repeatedly against the vehicle. This was not, it was an arrest, not a pat down. And I think that in terms of the record, it's unclear from the standpoint of the district court found that it was a pat down, but I see that my time is up and I finished briefly, that it was not a pat down in the context. He was trying to arrest him in handcuff. Thank you. Okay, well thank you very much, Mr. Barnhill and Mr. Thorne. And the court will be in recess.